**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STACY CLARK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 16-cv-2909 |
| v. | ) |
| | ) |
| TRANSWORLD SYSTEMS INC., | ) |
| | ) |
| Defendant. | ) |

### COMPLAINT

### INTRODUCTION

1. Stacy Clark seeks redress from unlawful practices engaged in by Transworld Systems Inc. ("Transworld"), contrary to the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA").

### JURISDICTION AND VENUE

2. Subject matter jurisdiction exists under 15 U.S.C. §1692k, and 28 U.S.C. §§1331 and 1337.

3. Because defendant's collection activities occurred in this District, and because they do business here, personal jurisdiction and venue in this District is proper.

### PARTIES

4. Stacy Clark lives in the Northern District of Illinois.

5. Transworld is a corporation chartered under California law with offices at 507 Prudential Road, Horsham, Pennsylvania 19044. It does business in Illinois. Its registered agent is CT Corporation System, 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604.

6. Transworld is a collection agency that does business in Illinois. It seeks to collect on defaulted consumer debts that were originally owed to others, using the mail, telephone and electronic wire services to do so, all in the general course of trade and commerce.

7. Transworld manages "Agency and Attorney Networks," which are described on its website (http://www.tsico.com/Services/Agency_Attorney_Network.html) as follows:

> Transworld Systems Inc. is expanding its existing Agency and Attorney Networks with current and new business opportunities. We are extremely proud of our Agency and Attorney Networks which designs and implements cost-effective collection solutions on behalf of clients across the country. We manage a nationwide network through leading-edge technology and the expertise needed to achieve results.
>
> We strive to surpass the growing and complex needs of our clients through the professional services provided by our Agency and Attorney Networks. TSI is currently seeking collection agencies and law firms to support our growing network and expanded business opportunities. TSI has a variety of business opportunities in which we are seeking professional, cost-conscious industry experts to join our Agency and Attorney Networks. The business opportunities contain, although not limited to, the following: healthcare, commercial, student loans, telecommunications, and bank card.

8. Transworld is the successor to NCO Financial Systems, Inc.

9. Transworld's Agency and Attorney Networks are continuations of virtually identical networks set up by NCO. For example, the Form 10-K annual report filed by NCO's parent company for 2010 said that NCO employees "coordinate and implement legal collection solutions undertaken on behalf of our clients through the management of nationwide legal resources specializing in collection litigation. Our collection support staff manages the attorney relationships and facilitates the transfer of necessary documentation."

10. Transworld is a spinoff of NCO and took over as default servicing agent for "National Collegiate" loans. On information and belief, the changeover occurred about January 1, 2015.

11. A press release issued in July 2014 stated:

Expert Global Solutions (EGS), a global leader in the Business Process Outsourcing (BPO) industry and parent company of ARM giant NCO Group, announced Monday that it has entered into an agreement to sell certain segments of its ARM business to private equity firm Platinum Equity. Financial terms of the pending transaction were not disclosed.

The proposed sale of Transworld Systems, Inc. comprises several business segments within EGS' ARM business: Transworld Systems, Education, Attorney Network, Healthcare Bad Debt, Government, and U.S.-based Third Party Collections. Once the transaction is completed the business is expected to operate as Transworld Systems, Inc. (TSI) going forward. . . . (http://www.insidearm.com/daily/debt-collection-news/ debt-collection/nco-parent-company-selling-transworld-systems-divesting-third-party-collection-unit/)

12. The personnel, practices and forms used by NCO in connection with the "National

Collegiate" loans continued to be used by Transworld.

13. Defendant is a "debt collector," as defined in 15 U.S.C. §1692a.

## FACTS

14. Defendant has been seeking to collect from plaintiff alleged student loan debts, incurred for personal, family or household purposes.

15. The loans have been the subject of multiple lawsuits in the Circuit Court of Cook County, in which Ms. Clark has been represented by counsel.

16. The suits were filed at the instance of Transworld or its predecessor NCO through their Attorney Networks.

17. Transworld or its predecessor NCO filed affidavits in the cases, and responded to discovery.

18. Transworld is thus well aware that Ms. Clark is represented by counsel in connection with such loans. Counsel's appearances are attached as Exhibits A, B, C.

19. All of the cases were dismissed. See Exhibits D, E, F.

20. In addition, two of the loans are the subject of an existing federal lawsuit, filed as 15 C 10549 and consolidated into 15 C 7755. Transworld is a defendant therein.

21. On or about February 9, 2016, Transworld sent plaintiff, directly, a letter seeking to collect three of the loans.

22. Plaintiff was upset, aggravated and harassed by the contact.

## PRIOR CONDUCT BY DEFENDANT

23. Transworld and its predecessor, NCO (hereafter, "Transworld / NCO") have engaged in deceptive and unfair conduct, or permitted such conduct to be used by other agencies working on its behalf (like WWR) in connection with the collection of debts, as shown by the following:

> (A) One of the NCO employees that signed affidavits for National Collegiate cases, Chandra Alphabet, signed an agreement with the Georgia Bar to cease and desist from engaging in the unauthorized practice of law in

March 2013.

(B) On July 9, 2013, NCO and related entities entered into a consent judgment in *United States v. Expert Global Solutions, Inc., formerly known as NCO Group, Inc., NCO Financial Systems, Inc., ALW Sourcing, LLC, Transworld Systems Inc.*, 3:13CV2611 (N.D.Tex.), agreeing to injunctive relief and to pay $3.2 million in penalties for improper debt collection practices involving harassment and abuse.

(C) In February 2012, the Attorneys General of 19 states (Alaska, Arkansas, Idaho, Illinois, Iowa, Kentucky, Louisiana, Michigan, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, Ohio, Oregon, Rhode Island, South Carolina, Vermont, and Wisconsin) entered into a settlement with NCO to resolve allegations of deceptive and unfair debt collection practices, under which NCO agreed to pay $575,000 to the 19 states for consumer protection enforcement efforts and an additional $50,000 for each participating state to refund consumers with valid claims.

(D) Between 2010 and 2012, NCO signed a series of consent orders with the Minnesota Department of Commerce, involving such conduct as hiring unfit persons.

(E) In November 2010, NCO signed a consent order with the Arizona Department of Financial Institutions involving, among other things, unauthorized practice of law.

(F) In January 2006, NCO entered into a settlement with the Pennsylvania Attorney General to resolve numerous claims of using false, deceptive, or misleading representations or means and harassment in connection with the collection of debts.

(G) In 2004, NCO Group Inc. settled Federal Trade Commission charges that it reported inaccurate information about debtors accounts to credit reporting

agencies and paid $1.5 million in civil penalties

24. On information and belief, based on affidavits and evidence in *Williams v. NCO Group Inc.*, No. 5:10CV761 (C.D.Cal.), *NCO Financial Systems Inc. v. Daniels Law Offices PC*, No. 1:11CV11035 (D.Mass) and other cases, NCO and Transworld select counsel, communicates with counsel, and instructs counsel. The nominal plaintiff in each case does not select, communicate with or instruct counsel.

25. As a matter of its standard operating procedure ("SOP"), Transworld / NCO directs network law firms to not communicate with the nominal plaintiffs:

> NCO will interact directly with the Client. In some instances, attorneys may interact directly with the Client only after a request is made through NCO and the Client approves. Only in urgent situations, the firm, and a Client may make contact providing that NCO has also been informed of the situation. If a Client initiates contact with an Attorney Firm directly, the firm is responsible, for the purposes of inventory control and tracking, to notify NCO of the communication.
>
> ln essence, the Attorney Firm's first point of contact is NCO. All statements, notices, information, etc. will go through NCO. (Attorney Firm SOP v.2.1)

26. Another portion of the Transworld / NCO SOP states that "all communications regarding accounts will be conducted between the Attorney Firm and NCO only." On information and belief, subsequent versions of the SOP were consistent.

27. Law firms hired by Transworld / NCO are expressly informed that they are "required to follow NCO's Network Attorney Standard Operating Procedures."

28. Both Transworld / NCO, and firms in its network, are paid on commission.

29. Transworld / NCO grades network firms in Attorney Report Cards based on "key performance indices" geared to the speed with which judgments are obtained and collected. The indices include such metrics as"Payer Rates," "Suit Rate," "Service Rates," "Judgment Rates" and "Spin" or "Liquidation Rates."

## COUNT I – FDCPA – INDIVIDUAL CLAIM

30. Plaintiff incorporates paragraphs 1-29.

31. Transworld violated 15 U.S.C. §1692c by sending Appendix A directly to plaintiff.

32. Section 1692c provides:

**§ 1692c. Communication in connection with debt collection**

**(a) Communication with the consumer generally. Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt–**

**. . . (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer; . . .**

WHEREFORE, judgment in favor of plaintiff should be given, awarding

    a. Statutory damages,

    b. Attorney's fees, litigation expenses and costs of suit, and

    c. All other proper relief.

/s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Emiliya Gumin Farbstein
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

## **NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

/s/ Daniel A. Edelman
Daniel A. Edelman

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that each defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with any plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiffs demand that defendants request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendants.

s/Daniel A. Edelman
Daniel A. Edelman